IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH J. VEA,<br><br>        Plaintiff,<br><br>v.<br><br><br>LIVONGO HEALTH, INC., GLEN TULLMAN, ZANE BURKE, CHRIS BISCHOFF, KAREN L. DANIEL, SANDRA FENWICK, PHILIP D. GREEN, and HEMANT TANEJA,<br><br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Kenneth J. Vea ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Livongo Health, Inc. ("Livongo" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Livongo and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Livongo and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Teladoc Health, Inc. ("Parent") (the "Proposed Transaction").

2.      On August 5, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Teladoc. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $4.24 per share of Livongo owned, in addition to a special cash dividend equal to $7.09 per share (the "Merger Consideration").

3.      On September 15, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Livongo and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Livongo shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Livongo shares.

9. Defendant Livongo is incorporated under the laws of Delaware and has its principal executive offices located at 150 West Evelyn Avenue, Suite 150, Mountain View, California 94041. The Company's common stock trades on the NASDQ Global Select Market under the symbol "LVGO."

10. Defendant Glen Tullman ("Tullman") is and has been the Chairman of the Board of Livongo at all times during the relevant time period.

11. Defendant Zane Burke ("Burke") is and has been the Chief Executive Officer of the Company at all times during the relevant time period.

3

12. Defendant Chris Bischoff ("Bischoff") is and has been a director of Livongo at all times during the relevant time period.

13. Defendant Karen L. Daniel ("Daniel") is and has been a director of Livongo at all times during the relevant time period.

14. Defendant Sandra Fenwick ("Fenwick") is and has been a director of Livongo at all times during the relevant time period.

15. Defendant Philip D. Green ("Green") is and has been a director of Livongo at all times during the relevant time period.

16. Defendant Hemant Taneja ("Taneja") is and has been a director of Livongo at all times during the relevant time period.

17. Defendants Tullman, Burke, Bischoff, Daniel, Fenwick, Green, and Taneja are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants, along with Defendant Livongo, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. Livongo empowers people with chronic conditions to live better and healthier lives through the Company's creation of a unified platform that provides smart, cellular-connected devices, supplies, informed coaching, data science-enabled insights and facilitates access to medications across multiple chronic conditions to help its members lead better lives. Livongo currently offers Livongo for Diabetes, Livongo for Hypertension, Livongo for Prediabetes and Weight Management, and Livongo for Behavioral Health by myStrength.

Livongo has created consumer-first experiences with high member satisfaction, measurable, sustainable health outcomes, and more cost-effective care for its members and its clients.

### The Company Announces the Proposed Transaction

20.     On August 5, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> **Purchase, NY and Mountain View, CA, August 5, 2020** — Teladoc Health (TDOC), the global leader in virtual care, and Livongo (LVGO), the leading Applied Health Signals company – today announced that they have entered into a definitive merger agreement. This merger represents a transformational opportunity to improve the delivery, access and experience of healthcare for consumers around the world. The highly complementary organizations will combine to create substantial value across the healthcare ecosystem, enabling clients everywhere to offer high quality, personalized, technology-enabled longitudinal care that improves outcomes and lowers costs across the full spectrum of health.
>
> Under the terms of the agreement, which has been unanimously approved by the Board of Directors of each company, each share of Livongo will be exchanged for 0.5920x shares of Teladoc Health plus cash consideration of $11.33 for each Livongo share, representing a value of $18.5 billion based on the closing price of Teladoc Health shares as of August 4, 2020. Upon completion of the merger, existing Teladoc Health shareholders will own approximately 58 percent and existing Livongo shareholders will own approximately 42 percent of the combined company.
>
> The combination of Teladoc Health and Livongo creates a global leader in consumer centered virtual care. The company will have expected 2020 pro forma revenue of approximately $1.3 billion, representing year over year pro forma growth of 85 percent. Demonstrating the power of the combined platform and the scalability of the data driven and virtual ethos, the combined company is expected to have pro forma Adjusted EBITDA of over $120 million for 2020.
>
> "This merger firmly establishes Teladoc Health at the forefront of the next-generation of healthcare," said Jason Gorevic, CEO of Teladoc Health. "Livongo is a world-class innovator we deeply admire and has demonstrated success improving the lives of people living with chronic conditions. Together, we will further transform the healthcare experience from preventive care to the most complex cases, bringing 'whole person' health to consumers and greater value to our clients and shareholders as a result."

"This highly strategic combination will create the leader in consumer-centered virtual care and provides a unique opportunity to further accelerate the growth of our data-driven member platform and experience," said Glen Tullman, Livongo Founder and Executive Chairman. "By expanding the reach of Livongo's pioneering Applied Health Signals platform and building on Teladoc Health's end-to-end virtual care platform, we'll empower more people to live better and healthier lives. This transaction recognizes Livongo's significant progress and will enable Livongo shareholders to benefit from long-term upside as the combined company is positioned to serve an even larger addressable market with a truly unmatched offering."

**Strategic and financial benefits of the combination**

- **The combination joins two highly complementary companies to create an unmatched, comprehensive platform for virtual healthcare delivery.** By bringing together leaders in virtual health and chronic condition management, the merger combines comprehensive clinical expertise with a rich technology and data-driven experience; prevention and chronic condition management with acute and specialty care; behavior change expertise with data science; global footprint with products meeting global need; access with innovation and two of the fastest growing companies in health technology.

- **Combining clinical expertise with deeper, more comprehensive consumer health insights to deliver the highest quality care and improve outcomes.** The transaction combines Teladoc Health's broad integrated services across virtual care with Livongo's data-driven approach to providing actionable, personalized, and timely health signals to create a comprehensive virtual healthcare delivery system. The combined company's platform will feature the full range of health support – from AI+AI engine-driven "nudges" and health coaches to therapists and board-certified physicians and the world's leading specialists – available anytime, anywhere to ensure the right care is always delivered.

- **Focusing on prevention as a critical lever for reimagining healthcare delivery.** Together, Teladoc Health and Livongo will empower consumers to proactively manage their wellbeing with the help of a single, comprehensive partner across the full spectrum of health, whether they are at-risk of, or living with, chronic conditions or need acute care. By tapping into data and care anytime, anywhere, consumers will have real-time information and guidance to stay healthy and avoid the unchecked progression of illness.

- **Joining two leaders in consumer behavior change, bringing millions more consumers into virtual care and building even deeper consumer and provider relationships.** Teladoc Health's flywheel approach to continued member engagement combined with Livongo's proven track record of using data science to build consumer trust will accelerate the combined company's development of longitudinal consumer and provider relationships.

- **Expanding Teladoc Health's portfolio and footprint with Livongo's leadership in addressing underpenetrated and underserved chronic condition populations.** Teladoc Health's global reach, including 70 million customers in the United States, and significant access to high growth segments in that market (e.g., Medicare and Medicaid) give Livongo a stronger platform to reach millions of new consumers, at risk of, or living with chronic disease.

- **Complementary cultures and operating philosophies that put a premium on health equity.** Teladoc Health has long focused on virtual care as the "great equalizer" expanding access to underserved communities facing negative social determinants of health. With Livongo's focus on chronic conditions, which disproportionately impacts underserved communities, the combined company will be positioned to make meaningful progress on addressing long-standing disparities.

- **Significant shareholder value creation and revenue acceleration opportunities.** The combined company is positioned to execute quantified opportunities to drive revenue synergies of $100 million by the end of the second year following the close, reaching $500 million on a run rate basis by 2025. These opportunities include increased cross-selling and penetration into each company's client base. They also include accelerating Livongo's international expansion through Teladoc Health's existing footprint, improving combined company member retention rates and driving more efficient enrollment. In addition to the quantified synergies, the combination offers significant unquantified synergies by enabling new care models and next generation solution opportunities. As a result of efficiencies, the combined company is expected to achieve cost synergies of $60 million by the end of the second year following the close, which can be reinvested to drive topline growth and margin expansion.

### Leadership & Governance

Jason Gorevic, current CEO of Teladoc Health, will be the CEO of the combined company. Led by Teladoc Health chairman, David Snow, the newly combined Teladoc Health Board of Directors will be composed of eight members of the Teladoc Health Board and five members of the Livongo Board.

**Additional Transaction Details**

The transaction is expected to close by the end of Q4 2020, subject to regulatory and Teladoc Health and Livongo shareholder approvals and other customary closing conditions. The newly combined company will be called Teladoc Health and will be headquartered in Purchase, New York.

**Advisors**

Lazard served as exclusive financial advisor to Teladoc Health and Paul, Weiss, Rifkind, Wharton & Garrison LLP served as legal advisor.

Morgan Stanley served as exclusive financial advisor to Livongo and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

21.     On September 15, 2020, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

23.     The Proxy Statement contains projections prepared by the Company's and Teledoc's management concerning the Proposed Transaction, but fails to provide material information concerning such.

8

24. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

25. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Revenue; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow.

27. With respect to Teledoc's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Revenue, (ii) Adjusted EBITA: and (iii) Unlevered Free Cash Flow.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

28. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Morgan Stanley's Financial Opinion

29. The Proxy Statement contains the financial analyses and opinion of Morgan Stanley concerning the Proposed Transaction, but fails to provide material information concerning such.

30. With respect to Morgan Stanley's *Livongo Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) all unlevered free cash flows used and all underlying line items; (ii) the Livongo street case estimates used in the analysis; (iii) the terminal values for Livongo; (iv) the inputs and assumptions underlying Morgan Stanley's use of discount rates ranging from 8.3% to 10.2%; and (v) the inputs and assumptions underlying Morgan Stanley's use of the perpetual growth rates of 2.5% to 3.5%.

31. With respect to Morgan Stanley's *Teladoc Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) estimates for net operating loss and tax credit carryforwards; (ii) the implied terminal values resulting from the analysis; (iii) the inputs and assumptions underlying Morgan Stanley's use of the discount rate range of 7.3% to 8.2%; and (iv) Teladoc's net debt.

32. With respect to Morgan Stanley's *Livongo Discounted Equity Value Analysis* and *Teladoc Discounted Equity Value Analysis*, the Proxy Statement fails to disclose the inputs and

assumptions underlying Morgan Stanley's use of the discount rates of 9.4% and 7.5%, respectively.

33. With respect to Morgan Stanley's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose the individual price targets for Livongo and Teladoc and the sources thereof.

34. The Proxy Statement notes that "Livongo may, in its sole discretion, also pay Morgan Stanley an additional discretionary fee of up to approximately $11 million contingent upon, and subject to, the consummation of the merger." However, the Proxy Statement fails to disclose the agreed parameters for such additional discretionary fee, the criteria Morgan Stanley needs to satisfy to receive the additional fee, and whether the Company anticipates paying Morgan Stanley the additional fee.

35. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

# COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

42. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

43. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

45. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Livongo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Livongo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 2, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*